UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>HASSAN SIMMONS,<br><br>Defendant. | **OPINION AND ORDER ON VIOLATION OF SUPERVISED RELEASE**<br><br>21 Cr. 280 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

On September 9, 2026, I held an evidentiary hearing regarding allegations that Hassan Simmons violated the terms of his supervised release. The United States Probation Office submitted a Violation Report on August 14, 2026 (the "Report"), alleging in Specification 4 that on August 11, 2026 Mr. Simmons harassed Shaquana Davis in violation of N.Y.P.L. § 240.26 in violation of the term of his supervision that Mr. Simmons not commit any state crime. The Report alleged additional specifications that were subsequently dropped by the Government and included pre-existing substance abuse specifications, which Mr. Simmons admitted to and attended counseling for. I ordered the parties to appear for an evidentiary hearing on Specification 4, which was held on September 9, 2026.

At the hearing, I heard testimony from Ms. Davis regarding the harassment alleged in the Report and reviewed surveillance video evidence. I also heard attorney argument regarding the legal standard and application of N.Y.P.L. § 240.26. The Government and defense disagreed on whether N.Y.P.L. § 240.26 could apply to the conduct at issue. I ordered the parties to submit briefing on the legal question. I make the following findings of fact and conclusions of law and

hold that Mr. Simmons did not violate N.Y.P.L. § 240.26 and therefore did not violate the terms of his supervised release.

## FINDINGS OF FACT

On the evening of August 11, 2026, Ms. Davis drove with a friend to a chicken establishment called Texas Chicken on the corner of 180th Street and Crotona Parkway in the Bronx. Tr. at 15-16. Ms. Davis exited her vehicle and walked into the chicken shop, and as she was entering the establishment, Ms. Davis heard Mr. Simmons shouting insults at her from across the street. Tr. at 23. Mr. Simmons was standing on the other side of 180th Street with several other individuals. Tr. at 20, 28. Ms. Davis recognized Mr. Simmons, whom she knew "from the neighborhood." Tr. at 20-21. Ms. Davis testified that she had known Mr. Simmons for over 10 years and had previously attended social events that he also attended, had seen his posts on social media, and generally knew him by reputation. Tr. at 21, 25, 33, 38, 44-46, 49. Ms. Davis identified Mr. Simmons as wearing, at the time, a white shirt, black bottoms, and an arm sling. Tr. at 24-25. Ms. Davis knew that Mr. Simmons had been shot a few days prior to August 11, 2026, having learned about it from social media. Tr. at 25-26.

Upon leaving the chicken shop, Mr. Simmons began yelling at Ms. Davis again, shouting insults. Tr. at 26-27. Ms. Davis shouted back at Mr. Simmons and the two exchanged insults and vulgarities. Tr. at 26-28, 64. Ms. Davis testified that Mr. Simmons threatened to shoot her. Tr. at 21. As the exchange occurred, Ms. Davis began to dial 911 to report Mr. Simmons' behavior to the police. Tr. at 26-28, 41. While she was initially dialing, an NYPD vehicle drove down 180th Street, on the side Mr. Simmons was standing. Tr. at 24, 28, 60. Ms. Davis crossed the street to approach the NYPD vehicle and officers. Tr. at 27-28, 58. The officers directed Ms. Davis to return to her side of the street and did not take her complaint about Mr. Simmons. Tr. at 27-28, 60.

After the NYPD vehicle drove away, Ms. Davis returned to the chicken shop and called 911 to make a complaint to the police. Tr. at 27-28, 59-60. In her complaint, Ms. Davis reported that she felt threatened and afraid of Mr. Simmons. Tr. at 29-30, 34. Ms. Davis testified that she felt fearful of Mr. Simmons and annoyed by his behavior because he had a repeated pattern of harassing her and that he had previously struck her uncle in the face. Tr. at 29-30, 41, 44, 48. Ms. Davis testified that she recalled one prior instance of Mr. Simmons harassing her, about a week prior to August 11, 2026. Tr. 46-47. Ms. Davis also testified that on a day after August 11, 2026, Mr. Simmons approached and bothered her again, in response to which Ms. Davis told him she would see him in court. Tr. at 51.

## CONCLUSIONS OF LAW

For charges of a violation of supervised release, the Government bears the burden of proof that the defendant violated the terms of supervised release by preponderance of evidence. 18 U.S.C. § 3583(e)(3) (a district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release."). "The preponderance standard requires proof that the defendant's violation of supervision was more likely than not." *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir. 2016) (internal quotation marks omitted). When the violation involves the commission of a state crime, "a district court may find that a defendant has committed another crime even in the absence of a conviction for that crime." *United States v. Glenn*, 744 F.3d 845, 848 (2d Cir. 2014). Therefore, the Government must show that Mr. Simmons violated N.Y.P.L. § 240.26 by a preponderance of the evidence.

N.Y.P.L. § 240.26(3) provides that a person violates the section when "He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y.P.L. § 240.26(3). The Government contends that Mr. Simmons behavior amounted to a course of conduct because Mr. Simmons'

previously harassed Ms. Davis, that the conduct of yelling insults at Ms. Davis served no legitimate purpose, and that it alarmed and seriously annoyed her.

I hold that the Government has not met its burden to prove that Mr. Simmons violated N.Y.P.L. § 240.26. To establish that a defendant engaged in a course of conduct under the law, there must be more than "one isolated incident" but "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose can support such a finding." *Carney v. Carney*, 231 A.D.3d 1535, 1536 (2024) (quotations omitted). The defense concedes that this element is satisfied because Ms. Davis testified that Mr. Simmons had previously engaged in similar behavior, recounting specifically one prior instance and one subsequent instance in a short time frame.

However, I hold that the record does not establish that Ms. Davis was alarmed or seriously annoyed by Mr. Simmons' conduct. *Rohrback v. Monaco*, 173 A.D.3d 1774, 1775 (2019) (Section 240.26 requires a showing that defendant "engaged in a course of conduct that did alarm or seriously annoy petitioner and the conduct served no legitimate purpose") (emphasis omitted). Ms. Davis testified that she felt afraid of Mr. Simmons and was annoyed by his behavior. However, on the evening of August 11, Ms. Davis chose to engage Mr. Simmons in a cross-street argument, rather than walking away from him. I do not find Ms. Davis's testimony that she was genuinely fearful of Mr. Simmons credible. Not only did Ms. Davis choose to engage with Mr. Simmons on August 11, but her testimony also demonstrated that she was able to repeatedly ignore his conduct and go about her business, albeit with some irritation. Therefore, I hold that Mr. Simmons' conduct did not rise to the level of alarming or seriously annoying Ms. Davis.

Thus, I hold that the Government has not shown by a preponderance of evidence that Ms. Davis was actually alarmed or seriously annoyed by Mr. Simmons' conduct and therefore cannot prove that Mr. Simmon's violated the terms of his supervised release.

## CONCLUSION

I hold that the Government has not proved Specification 4 of the Violation Report, and Specification 4 is dismissed. The Clerk of Court shall terminate ECF No. 276.

SO ORDERED.

Dated: October 1, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge